<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVINCI TECHNOLOGY CORPORATION d/b/a DAVINCITEK, | Civil No. 05-1561 Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiff, | |
| v. | **OPINION** |
| FRANK RUBINO, et al., | May 25, 2005 |
| Defendants. | |

**HOCHBERG, District Judge**

      This matter comes before the Court on a motion filed by Plaintiff, DaVinci Technology Corporation d/b/a DaVinciTek ("Plaintiff") for a preliminary injunction restraining and enjoining Defendants DaVinciTek Corporation, Frank Rubino and Thomas J. Mastrangelo ("Defendants") from utilizing in any manner the service mark "DaVinciTek," the corporate name DaVinciTek Corporation and any and all domain names referring in any manner to DaVinciTek, including but not limited to davinci-tek.com and davincitekcorp.com.  The Court has held two hearings on this issue.

      Plaintiff purchased the domain name www.davincitek.com on October 18, 2004, and immediately began offering technology consulting services under that name and service mark. Thereafter, on January 6, 2005, Defendants began to use the domain name www.davinci-tek.com to provide information technology consulting and solutions.  Plaintiff alleges that this use infringes and dilutes DaVinciTek's trademarks in violation of the Lanham Act and that it unfairly competes with DaVinciTek's trademarks in violation of the Lanham Act, New Jersey law and the

common law.  Plaintiff also argues that Defendants' registration and maintenance of the domain name www.davinci-tek.com constitutes cyberpiracy in violation of the federal Anticybersquatting Consumer Protection Act (the "ACPA").

For the reasons that follow, Plaintiff's request for a preliminary injunction is hereby granted and Defendants are enjoined from using the company name DaVinciTek Corporation and from maintaining, transferring or using the domain names davinci-tek.com and davincitekcorp.com.

## I.      FACTS AND PROCEDURAL HISTORY

Plaintiff was incorporated in the State of New Jersey on October 20, 2004.  On October 22, 2004, a Registration of Corporate Alternate Name was filed stating that the alternate name to be used by DaVinci Technology Corporation was "DaVinciTek."  Defendant, DaVinciTek Corporation was incorporated in the State of New Jersey on December 23, 2004.

Anthony T. Curlo ("Curlo") and David Cozzens ("Cozzens") are the principal shareholders of Plaintiff.  Prior to forming Plaintiff, both Curlo and Cozzens were associated with Storage Management Consultants, Inc. d/b/a SMC Corporation ("SMC") which was later renamed Xperium Corporation ("Xperium").  SMC was formed in January 2003.  Curlo was a founding member of SMC and served as its Chief Executive Officer.  Defendant Mastrangelo was SMC's President and Chief Operating Officer, and Defendant Rubino was the Chief Financial Officer.  Cozzens began working at SMC as a consultant on September 10, 2003, initially as an independent contractor.  As of January 1, 2004, Cozzens became SMC's Chief Technology Officer and Senior Vice President of Services and Technology.

On August 24, 2004, Curlo was ousted by Defendants Rubino and Mastrangelo. Cozzens resigned from SMC on October 15, 2004. After his ouster, Curlo formed DaVinci Technology Corporation and Cozzens joined with Curlo to become a principal in this new venture.

Curlo and Cozzens claim that "Curlo's wife came up with the fanciful idea of coupling the name of DaVinci, a progressive Renaissance thinker, with technology, leading to the company's corporate name - DaVinci Technology Corporation, its trade name (alternate corporate name) - DaVinciTek, the "DAVINCITEK" service mark and the company's logo - 'Leading the IT Renaissance.'" Complaint, ¶ 18.

On October 18, 2004, Curlo purchased the domain name "www.davincitek.com" from Register.com. Curlo immediately set up a temporary website and thereafter began to offer technology consulting services under the name "DaVinciTek." Since October 18, 2004, Plaintiff claims it has continuously used the service mark "DaVinciTek" in connection with its business. On November 29, 2004, the new company logo was finalized, approved and posted to the company website and formal solicitations under the new DaVinciTek brand identity service mark began to take place. DaVinciTek mailed out approximately 300 holiday cards on December 17, 2004, bearing the "DaVinciTek" trade name and service mark to prospective clients, business acquaintances and others. Plaintiff alleges that one of the recipients of their card forwarded the card to Defendants.

Curlo, Cozzens and Defendants are also engaged in state court litigation regarding certain aspects of their soured business relationship. A court hearing was conducted in the state court action on December 23, 2004. Also on December 23, 2004, Defendants Rubino and Mastrangelo

incorporated "DaVinciTek Corporation" in the State of New Jersey.[1]  While in court on December 23, 2004, on the related state court case, Defendants' attorney referred to the Christmas card to argue that Curlo and Cozzens had set up a competing business.[2]  Also on December 23, 2004, Defendant Rubino, through his attorney, filed an intent to use service mark application with the U.S. Patent and Trademark Office for "DAVINCITEK" offering the same services offered by Plaintiff.  On December 28, 2004, Defendants registered the domain name "Davinci-Tek.com" through their website developers, Spotlite Solutions, LLC.  The website became operational on January 6, 2005.

---

[1]  At the Court hearing held on March 22, 2005, Defendants claimed that at a meeting in November 2003, Mr. Rubino floated the idea of associating SMC's business with the Renaissance concepts of Leonardo DaVinci.  However, Mr. Curlo and Mr. Cozzens vehemently denied that any such meeting occurred or that this concept had ever been discussed.  The Court need not resolve this credibility issue at this time because, even assuming Mr. Rubino had raised the DaVinci concept, Defendants cannot now claim trademark infringement of a nascent idea that was never adopted by Rubino as a name when, on August 13, 2004, he and his partners decided to change SMC's name to Xperium and not to DaVinci.  Mr. Rubino testified that he was laughed at when he suggested the DaVinci concept "because I'm not a creative person."  Transcript of Proceedings, March 22, 2005, p. 42, line 5-6.

Defendants further claim that implementation of the DaVinci Plan began in late 2003 when they had their web developer place a 1-inch picture of someone they believed to be Leonardo DaVinci, even though it is actually William Shakespeare, on their Xperium website.  The Court finds this assertion by Defendants unpersuasive for several reasons.  The Shakespeare image was found on the Xperium website along with about 80 other images only once on a secondary page, three levels deep.  It is extremely unlikely that the intelligent Defendants in this case would have believed the Shakespeare image was actually Leonardo DaVinci when the website from which they obtained this image, Getty Images, clearly markets the picture in question as William Shakespeare.

[2]  Interestingly, even though Defendants were in state court on December 23, 2004 and used Plaintiff's Christmas card as an exhibit there, they did not state: (a) that they came up with the DaVinci name idea first;  (b) that Plaintiff supposedly stole this "corporate asset" (i.e., the name not chosen by Rubino); or (c) that they had just that same day filed to use the same name on a website offering the same services as their current company, Xperium.

4

On March 7, 2005, while working with their attorneys to prepare for service mark registration, Cozzens and Curlo discovered Defendants' DaVinciTek Corporation filing and Defendants' davinci-tek.com website.  On March 9, 2005, Plaintiff's counsel issued a cease and desist letter to Defendants, to no avail.

On March 22, 2005, Plaintiff filed the instant Motion for a Preliminary Injunction, seeking restraints, as well as a Complaint which forms the basis of this Motion.  The Court conducted a brief hearing on that date and then oral argument on the Motion on March 30, 2005, once Defendants had the opportunity to file a responsive brief.

## II.     STANDARD OF REVIEW: PRELIMINARY INJUNCTION

An injunction is an extraordinary remedy which should only be granted in limited circumstances.  AT&T v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994).  However, a preliminary injunction is appropriate where the moving party produces evidence to establish the following four factors: (1) the likelihood plaintiff will prevail on the merits; (2) the extent to which plaintiff is being irreparably harmed by the conduct at issue; (3) the extent to which the non-moving party will suffer harm if the injunction is granted and whether the balance of equities favors the plaintiff; and (4) the public interest.  Id. at 1427; Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 191 (3d Cir. 1990).

## III.    DISCUSSION

### A.     Likelihood of Success on the Merits

Plaintiff alleges that Defendants' use of the domain name davinci-tek.com and the company name DaVinciTek Corporation constitutes unfair competition and cyberpiracy under the Lanham Act, 15 U.S.C.A. §§ 1051 et seq., unfair competition under N.J.S.A. 56:4-1 et seq.,

5

and tortious interference with prospective economic advantage. Defendants claim that they came up with the DaVinci concept first sometime in late 2003, and that Curlo and Cozzens stole this "corporate asset" when they left SMC.[3] This Court has determined that Plaintiff has shown a likelihood of success on the merits as to unfair competition and cyberpiracy under the Lanham Act.[4]

      **1.**     **The Lanham Act**

Under the Lanham Act § 43(a)(1)(A), 15 U.S.C.A. § 1125(a),

> (1) any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or devise, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

---

[3] Even assuming that Defendants were the first to come up with the DaVinci concept, the Lanham Act is clear that a mark must be used in commerce before it warrants protection. Allard Enterprises, Inc. v. Advanced Programming Resources, 146 F.3d 350, 356 (6th Cir. 1998); Pedi-Care, Inc. v. Pedi-A-Care Nursing, Inc., 656 F. Supp. 449, 454 (D.N.J. 1987). Defendants seemingly abandoned their DaVinci idea until sometime in January 2005, after Cozzens and Curlo had formed and incorporated DaVinci Technology Corporation, set up their www.davincitek.com website and sent out their DaVinci Christmas Cards.

[4] At this time, the Court does not determine whether one side's hands are cleaner than the others'. Instead, the Court will look solely to trademark law and not dueling adjectives.

Therefore, to prevail on a claim under 15 U.S.C. §1125(a), a plaintiff must establish that: "(1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services."  <u>Fisons Horticulture, Inc. v. Vigoro Industries, Inc.</u>, 30 F.3d 466, 472 (3d Cir. 1994);  <u>A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.</u>, 237 F.3d 198 (3d Cir. 2000).  The United States Court of Appeals for the Third Circuit in <u>Scott Paper Co. v. Scott's Liquid Gold, Inc.</u>, 589 F.2d 1225, 1229 (3d Cir. 1978), set forth ten factors to be considered in evaluating the likelihood of confusion by consumers:

(1) the degree of similarity between the owner's mark and the allegedly infringing mark;
(2) the strength of the owner's mark;
(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
(4) the length of time the defendant has used the mark without evidence of actual confusion arising;
(5) the intent of the defendant in adopting the mark;
(6) evidence of actual confusion;
(7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;
(8) the extent to which the targets of the parties' sales efforts are the same;
(9) the relationship of the goods in the minds of the public because of the similarity of function; and
(10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market.

<u>Scott Paper Co.</u>, 589 F.2d at 1229.  No single factor is determinative, although the degree of similarity is the most important factor.  <u>Kos Pharmaceuticals, Inc. v. Andrx Corp.</u>, 369 F.3d 700, 709, 712 (3d Cir. 2004).  The Third Circuit noted in <u>Fisons Horticulture</u>:  "The weight given to each factor in the overall picture, as well as its weighting for plaintiff or defendant, must be done on an individual fact-specific basis. . . .  We have emphasized the importance of similarity of the

marks in likelihood of confusion, Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 293 (3d Cir. 1991), but we have not ranked the factors otherwise." 30 F.3d at 476, n.11.  Not every factor is relevant in all cases.  Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc., 269 F.3d 270, 280 (3d Cir. 2001).

      (1) Similarity of the Trademarks

"Where the names are identical ... the names in themselves are evidence of likelihood of confusion." American Plan Corp. v. State Loan & Fin. Corp., 365 F.2d 635, 639 (3d Cir.1966). "Although the degree of similarity between the owner's mark and the alleged infringing mark is but one factor in the multi-factor confusion analysis, . . . [our circuit has] recognized that when products directly compete, mark similarity 'may be the most important of the ten factors in Lapp.'"  Checkpoint Systems, Inc., 269 F.3d at 281 (quoting Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 476 (3d Cir.1994)).  In short, if upon evaluating the contested marks "the overall impression created by marks is essentially the same, 'it is very probable that the marks are confusingly similar.'" Opticians, 920 F.2d at 195 (quotation omitted).

      In the instant case, the company name and domain names used by Plaintiff and Defendants are virtually identical.  On October 18, 20 and 22, 2004, Anthony Curlo registered the domain name "davincitek.com," incorporated Plaintiff company as DaVinci Technology Corporation, and filed an alternate name certificate of "DaVinciTek" with the State of New Jersey.  In the midst of a nasty state court suit stemming from the split between the parties who were formerly doing business together as SMC, and after learning that Curlo and Cozzens were using the DaVinci Tek name, Defendants incorporated "DaVinciTek Corporation" in the State of New Jersey on December 23, 2004 and acquired the domain name "davinci-tek.com" on

December 28, 2004.  Plaintiff and Defendants operate in the same industry - providing IT services.  "The closer the relationship between the products, and the more similar their sales contexts, the greater the likelihood of confusion," as the preliminary evidence suggests in this case.  Fisons, 30 F.3d at 473.

(2) Strength of the Mark

"Under the Lanham Act, stronger marks receive greater protection" because they "carry greater recognition, [so that] a similar mark is more likely to cause confusion."  A & H Sportswear, 237 F.3d at 222.  Marks are often classified in five categories of generally increasing distinctiveness; they may be:  1) generic;  2) descriptive;  3) suggestive;  4) arbitrary; or  5) fanciful.  Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992) (citing Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976)).  Marks that are suggestive, arbitrary or fanciful are considered inherently distinctive, and therefore, are entitled to protection.  Id.  A fanciful mark "as a classifying concept is usually applied to words invented solely for their use as trademarks."  Abercrombie, 537 F.2d at 11.  Fanciful marks use terms that neither describe nor suggest anything about the product; they "bear no logical or suggestive relation to the actual characteristics of the goods."  A&H Sportswear, Inc., 237 F.3d at 221 (quoting A.J. Canfield Co. v. Honickman, 808 F.2d 291, 296 (3d Cir. 1986)).  DaVinciTek is a fanciful mark, linking a Renaissance artist and thinker to contemporary technology.  It is therefore entitled to protection.  Accordingly, this factor weighs in favor of a finding of likelihood of confusion.

(3) Sophistication of the Purchasers

The Court must consider whether confusion is likely, taking into account the care and attention expected of consumers.  See Checkpoint Systems, Inc., 269 F.3d at 284.  In a case such

9

as this, where the marks are virtually identical and the companies offer very similar services, confusion is inevitable even if potential customers are sophisticated, and exercise great care and attention.  See, e.g., Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 464 (3d Cir. 1983).

(4) and (6) Evidence of Actual Confusion

These two factors are not weighty in this case as Defendants have been using their mark only since December 2004 and Plaintiff only since October 2004.  However, Plaintiff argues that at least one search engine would direct a user to Defendants' website when performing a search attempting to reach Plaintiff's website.

(5) Defendants' Intent

"[E]vidence of intentional, willful and admitted adoption of a mark closely similar to the existing mark[ ] weighs strongly in favor of finding [a] likelihood of confusion."  Kos Pharmaceuticals, 369 F.3d at 721 (quoting Checkpoint Systems, Inc., 269 F.3d at 286).  "This inquiry extends beyond asking whether a defendant purposely chose its mark to "promot[e] confusion and appropriat[e] the prior user's good will."  Fisons, 30 F.3d at 479 (quotation omitted).  The adequacy and care with which a defendant investigates and evaluates its proposed mark, and its knowledge of similar marks or allegations of potential confusion, are highly relevant.  See, e.g., id. at 480 (directing district court to consider defendant's trademark search and investigation of similar marks to determine if it was "careless in its evaluation of the likelihood of confusion"); Lapp, 721 F.2d at 463 (relying on district court's finding that while defendant "may have acted innocently, [it] was careless in not conducting a thorough name search for American uses of the name"); Morgenstern Chemical Co. v. G.D. Searle & Co., 253 F.2d 390, 394 (3d Cir. 1958) (citing finding that defendant "trod a very narrow course when it

adopted the name Mictine with full knowledge of the prior use of the name Micturin by the plaintiff"). A defendant that "persisted in its plan" to adopt a mark "after being warned of too close resemblance between" its proposed mark and plaintiff's mark is not "blameless[ ]." Telechron, Inc. v. Telicon Corp., 198 F.2d 903, 908 (3d Cir.1952).

In the instant case, there is evidence that Defendants chose its business name with Plaintiff's business name in mind. While Defendants claim to have considered using DaVinci as part of a name for a new business sometime in late 2003, Rubino testified that this idea was rejected by his creative consultants and instead the name SMC was changed to Xperium in August 2004. Defendants did not set up a new company using the DaVinci name until late December 2004/January 2005, after they learned that Cozzens and Curlo had started a business using DaVinci Technology as its name. On the precise date that Defendants' attorneys were in state court arguing that Cozzens and Curlo were competing with them in the marketplace because they had formed DaVinci Technology Corporation, Defendants themselves incorporated DaVinciTek Corporation in the State of New Jersey and filed an application of intention to use of the service mark "DaVinciTek." Defendants' actions demonstrate likelihood of success on the merits by Plaintiffs in proving that Defendants were aware of the likelihood of confusion and may even have intentionally copied Plaintiff's name. There was, in the words of Judge Learned Hand, "no reason whatever why [defendant] should have selected [an arbitrary, made-up trade-name] which bore so much resemblance to the plaintiff's." See Lambert Pharmacal Co. v. Bolton Chem. Corp., 219 F. 325, 326 (S.D.N.Y.1915). The website set up by Defendants under the domain name www.davinci-tek.com is virtually identical to that of its existing business

11

Xperium.  It offers no additional or new services as DaVinci-Tek.  The only difference is the use of the name Plaintiffs were using for their new venture.

(7), (8), and (9) Similarity of the Goods, Customers, etc.

A strong likelihood of confusion exists when the goods and services fall within the same industry or class.  Opticians Ass'n, 920 F.2d at 195.  Both Plaintiff and Defendants are in the business of providing IT services, and there is significant overlap in their target markets and channels of trade.  These factors, therefore, weigh heavily in favor of a likelihood of confusion.

(10) Other Factors that Suggest that the Prior Owner Might Manufacture Both Products

There are no other significant factors to be discussed.

This Court finds that the totality of the factors weigh in Plaintiff's favor in finding a likelihood of confusion, and furthermore finds that Plaintiff has demonstrated a substantial likelihood of success on the merits under the Lanham Act, 15 U.S.C. §1125(a).

## 2.     The Anticybersquatting Consumer Protection Act

In 1999, Congress enacted the Anticybersquatting Consumer Protection Act (the "ACPA"), 15 U.S.C. §1125(d), to overcome the "increasing[ ] sophistication" of cybersquatters who "now take the necessary precautions to insulate themselves from liability" under the Lanham Act and to overcome the "uncertainty as to the trademark law's application to the Internet [which] has produced inconsistent judicial decisions and created extensive monitoring obligations, unnecessary legal costs, and uncertainty for consumers and trademark owners alike."  S. Rep. No. 106-140 at 7; see also Sporty's Farm L.L.C. v. Sportsmen's Market, Inc., 202 F.3d 489, 495-96 (2nd Cir. 2000), cert. denied, 120 S. Ct. 2719 (2000).  The ACPA has created a statutory remedy for trademark violations in the registration, trafficking, or use of a domain name.

Plaintiff argues that Defendants' use of the domain name davinci-tek.com violates the ACPA.  As more fully set forth below, this Court finds a substantial likelihood of success on the merits with respect to this claim.

The ACPA provides, in relevant part:

A person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person–

> (i) has a bad faith intent to profit from that mark . . .; and
>
> (ii) registers, traffics in, or uses a domain name that–
>
>> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark.

15 U.S.C. §1125(d).

Under the ACPA, Plaintiff must prove a likelihood of success on three elements for the issuance of a preliminary injunction: (1) the mark must be "distinctive" and thus entitled to protection; (2) the allegedly infringing domain names must be "identical or confusingly similar;" and (3) defendants must have had a bad-faith intent to profit from plaintiff's trademarks.  See Advance Magazine Publishers, Inc. v. Vogue International, 123 F. Supp. 2d 790, 798 (D.N.J. 2000).

The first two prongs of the test under the ACPA are easily satisfied here.  For the same reasons discussed above, this Court finds that the DaVinci Tek mark is distinctive and the infringing domain name, "davinci-tek.com," is confusingly similar, if not identical, to Plaintiff's domain name "davincitek.com."

In determining whether a person has a bad faith intent to profit from the mark, the ACPA lists nine non-exclusive factors that a Court may consider in making such determination. Courts are not limited to consideration of these factors only, but may consider any other elements of bad faith. 15 U.S.C. §125(d); Sporty's Farm, 202 F.3d at 498. The listed factors are:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the persons prior conduct indicating a pattern of such conduct;
>
> (VII) the persons's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
>
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are

>   famous at the time of registration of such domain names, without
>   regard to goods or services of the parties; and
>
>   (IX) the extent to which the mark incorporated in the person's
>   domain name registration is or is not distinctive and famous within
>   the meaning of subsection (c)(1) of this section.

15 U.S.C. § 1125(d)(1)(B)(I).

Applying these factors, this Court finds evidence of bad faith intent by Defendants in selecting as its name an identical name to Plaintiff, as the two groups were battling in state court over their business split. Plaintiff has shown a substantial likelihood of success on the merits under the ACPA. First, Defendants had no intellectual property rights in the domain name "davinci-tek.com" prior to registering it. Even if Defendants had considered using DaVinci in their name, they chose not to do so. A business does not have rights to a name it rejected. Plaintiff began using the name DaVinci Technology prior to Defendants' incorporation or domain name registration. Second, the domain name in question is not Mr. Mastrangelo's or Mr. Rubino's legal name, and to the extent that such domain names refer to the legal name of their business, Plaintiff has demonstrated a substantial likelihood of success in proving that Defendants' choice to use DaVinci-Tek as its name itself infringes the DaVinci Technology Corporation mark, as this Court held in Part III.A.1. 15 U.S.C. § 1125(d)(1)(B)(i)(II). Third, Defendants' intent to divert consumers from Plaintiff's website may be inferred from the sequence of events leading up to the filing of this case, as stated above, <u>i.e.</u>, Defendants chose not to do anything with the DaVinci name until they found out in late 2004 that Curlo and Cozzens had created a business with the DaVinci name.[5] 15 U.S.C. § 1125(d)(1)(B)(i)(V). Fourth,

---

[5] While Defendants claim that they put a picture of DaVinci on their website for Xperium, there is nothing but an unidentified picture of William Shakespeare, about 1-inch

Defendants cannot claim that their use of the domain name was "noncommercial" or a "fair" use. 15 U.S.C. § 1125(d)(1)(B)(i)(IV). Fifth, Defendants posted incorrect information on their website, including a non-working phone number and advising customers to contact them at info@ DaVinciTekcorp.com, the domain name owned by Plaintiff. 15 U.S.C. § 1125(d)(1)(B)(i)(VII).

Plaintiff also argues that Defendants' bad faith is demonstrated by the "unique circumstances of this case, which do not fit neatly into the specific factors enumerated by Congress but may nevertheless be considered under the statute." Sporty's Farm, 202 F.3d at 499. Plaintiff avers that the bad blood that has developed between Curlo and Cozzens and Defendants Mastrangelo and Rubino, coupled with the fact that Defendants did not adopt its new business name, service mark and domain name until after they became aware that Curlo and Cozzens were using that name, can be nothing more than a bad faith intent to divert internet business from Curlo and Cozzens. This Court finds that these factors, plus the fact that Defendants have no new business offered under the DaVinciTek name beyond that already offered under Xperium, demonstrate a substantial likelihood of success in proving Defendants' bad faith intent.

This Court thus concludes that Plaintiff has demonstrated a substantial likelihood of success on the merits that (1) Defendants' use of the name davinci-tek.com violates the ACPA and (2) Defendants' use of that name, along with the company name DaVinciTek, violates § 43 of the Lanham Act.

---

square along with approximately 70 other images. This is humorous but not sufficient to show prior use of "DaVinci."

### B. Irreparable Harm to Plaintiff

Irreparable harm "must be of a particular nature, so that compensation in money alone cannot atone for it." Morton v. Beyer, 822 F.2d 364, 372 (3d Cir. 1987) (citations omitted). "Grounds for irreparable injury include loss of control of reputation, loss of trade and loss of good will." Kos Pharmaceuticals, 369 F.3d at 726. Because the lack of control over one's mark "creates the potential for damage to . . . reputation . . . trademark infringement amounts to irreparable injury as a matter of law." Id. Accordingly, this Court finds as a matter of law that Plaintiff has demonstrated irreparable injury sufficient for the issuance of a preliminary injunction.

### C. Harm to Defendants/ Balance of the Hardships

The Court is required to consider the extent to which the relief sought will cause the Defendants to suffer harm if the preliminary injunction issues. Kos Pharmaceuticals, 369 F.3d at 727. Generally speaking, where bad faith of a defendant in a trademark infringement case has been clearly demonstrated, the balance of equities will not favor defendant. See, e.g., S&R Corp. v. Jiffy Lube Intern., Inc., 968 F.2d 371, 379 (3d Cir. 1992); Opticians Ass'n, 920 F.2d at 196; Jews for Jesus v. Brodsky, 993 F. Supp. 282, 312 (D.N.J. 1998) . The Court finds that Defendants set up their new website and incorporated under the DavinciTek Corporation name in an apparent attempt to interfere with Plaintiff's new business efforts after a prior business relationship between Defendants and the principals of Plaintiff soured. Moreover, Defendants have only been using the domain name and company name, DaVinciTek Corporation, for a very short period and seem to have expended very little time and money in setting them up. In fact, as stated above, Defendants' website seems to be very nearly an exact replica of its Xperium and

SMC websites.  Any potential harm is mitigated by the fact that Defendants can continue to operate their websites under Xperium and SMC and offer the same services.  Finally, the strong showing of irreparable injury to Plaintiff clearly outweighs any potential harm to Defendants and thus tips the equities in its favor.

      **D.**    **The Public Interest**

Once the likelihood of success on the merits and irreparable injury to plaintiff have been amply demonstrated, as they have here, "it will almost always be the case that the public interest will favor" injunctive relief.  <u>Jews for Jesus</u>, 993 F. Supp. at 312;  <u>AT&T</u>, 42 F.3d at 1427 n.8.  In addition, in <u>Kos Pharmaceuticals</u>, the Third Circuit found that there was confusion by use of the similar marks and held, as a matter of law, that confusion equated with damage to the public.  <u>Kos Pharmaceuticals</u>, 369 F.3d at 730.  In this case, as noted above, there is ample evidence of likelihood of confusion among consumers, and further evidence that the consuming public will likely continue to be confused by Defendants' use of the company name and domain names "DaVinciTek" and "davinci-tek.com."  The issuance of an injunction in this case will protect the public from this deceptive and confusing use of the names DaVinciTek Corporation and Davinci-Tek, and an injunction is therefore in the public interest.

**IV.**    **CONCLUSION**

For the reasons stated above, Plaintiff's motion for a preliminary injunction is hereby granted, and Defendants are enjoined from maintaining, transferring or using the domain name "davinci-tek.com," and the company name "DaVinciTek Corporation," or any other names

confusingly similar to such terms.  Plaintiff is required to post a $5,000 bond.[6]  An appropriate order will issue.

s/ Faith S. Hochberg<br>
Hon. Faith S. Hochberg, U.S.D.J.

---

[6]  The Court will not require Plaintiff to post a greater amount because it is satisfied based on testimony at the hearings that neither DaVinci company is making very much money at this time since they were both start up companies.